| | | |
|---|---|---|
| **ETHAN GLOVER** | * | IN THE |
| 4 Pennyborough Court | | |
| Baltimore, Maryland 21136 | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | BALTIMORE CITY |
| **BRIAN PATTERSON** | * | |
| *In his Individual and Official Capacity* | | |
| Baltimore City Police Task Force Officer | * | CASE#:   C-24-CV-25-000928 |
| ▮▮▮▮▮▮▮▮▮ | * | |
| | * | |
| Defendant | * | |
| **JARED STERN** | * | |
| *In his Individual and Official Capacity* | | |
| Baltimore City Police Task Force Officer | | |
| 601 East Fayette Street, | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| Defendant | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES**, Plaintiff, Ethan Glover, by and through his attorneys, J. Wyndal Gordon of **THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**, and Raouf M. Abdullah of **RMA & ASSOCIATES, LLC** to submit this Complaint and Demand for Jury Trial pursuant to Md. Rules 2-305, 2-325, CJ § 5-304, and CJ § 6-103, alleging as true the following:

1.     Plaintiff Ethan Glover (hereinafter "Plaintiff", "Plaintiff Glover" or "Glover") is a resident of the County of Baltimore, State of Maryland; he was a Baltimore City Police Officer assigned as a Task Force Officer for the Drug Enforcement Agency's Group 51 which was the Violent Drug Traffickers Group; Plaintiff is African-American.

1

2.     At all times alleged herein, Defendant, Brian Patterson (hereinafter "Defendant", "co-Defendant Patterson", "Defendant Patterson", or "Patterson"), is a resident of the County of Harford, and is/was employed by the Baltimore City Police Department ("BPD") which is the primary law enforcement agency for Baltimore City, headquartered in the City of Baltimore, State of Maryland; at all times alleged herein, Defendant Patterson worked as a detective for BPD's  Public Integrity Bureau and a Task Force Officer ("TFO") for the Federal Bureau of Investigations' (FBI) Public and Border Corruption Task Force; at all times alleged herein, unless otherwise expressly stated, Defendant Patterson was acting under color of Federal, State and/or local law and within the scope of his employment; Defendant Patterson is being sued in both his individual and official capacities; Defendant Patterson is Caucasian and/or non African-American.

3.     At all times alleged herein, Defendant, Jared Stern (hereinafter "Defendant", "co-Defendant", "Defendant Stern", or "Stern"), was employed by the Baltimore City Police Department ("BPD") which is the primary law enforcement agency for Baltimore City, headquartered in the City of Baltimore, State of Maryland; at all times alleged herein, Defendant Stern worked as a detective for BPD's Public Integrity Bureau and a Task Force Officer ("TFO") for the Federal Bureau of Investigations' (FBI) Public and Border Corruption Task Force; at all times alleged herein, unless otherwise expressly stated, Defendant Stern was acting under color of Federal, State and local law and within the scope of his employment; Defendant Stern is being sued in both his individual and official capacities; Defendant Stern is Caucasian and/or non African-American.

4.     The acts giving rise to the causes of action raised in this Complaint and Demand

for Jury Trial occurred in the City of Baltimore, State of Maryland. See CJ §6-103.

5.    Plaintiff has satisfied the notice of claim prerequisites to suit as specified by the Local Government Tort Claims Act, CJ § 5-304 and the Maryland Tort Claims Act, SG §12-103 et seq. (to whatever extent applicable), by serving Notices of Intent via certified mail, return receipt requested, on the 24th Day of May, 2023, upon Ebony Thompson, Baltimore City Solicitor; and on the 3rd day of November, 2023 and upon Dereck Davis, Maryland State Treasurer, respectively. Baltimore City acknowledged receipt of said Notice on June 9, 2023, by return of the green card Receipt, and the State Treasurer acknowledged receipt of said Notice of Intent on November 14, 2023, by return of the green card Receipt.

## STATEMENT OF FACTS

Plaintiff adopts all of the facts and allegations contained in paragraphs 1-5 as if fully alleged below; Plaintiff further alleges the following:

1.    On or about December 4, 2020, TFO Defendant Brian Patterson swore out a search & seizure warrant for Plaintiff's house, making patently false & misleading allegations that Plaintiff was involved in the illegal pursuits of the infamous Gun Trace Task Force (GTTF) lead by the infamous BPD Officer, Wayne Jenkins, and that he had purloined monies seized in a drug bust/raid by State and/or Federal law enforcement officials.

2.    TFO Defendant Patterson knew that Plaintiff had never been a part of GTTF. Plaintiff, and Wayne Jenkins--a known GTTF police-terrorist, were merely classmates in the police academy; TFO Defendant Patterson knew that Plaintiff only three times in his entire career responded to addresses where Jenkins was present; TFO Defendant Patterson knew that each time Plaintiff responded, it was a part of his official duties as a DEA Task Force Officer; and

3

TFO Defendant Patterson knew that each address where Plaintiff responded was an address under federal investigation to crack-down on GTTF's illegal activities pursuant a Memorandum of Understanding between the DEA and the Baltimore City Police Department; in fact, TFO Defendant Patterson further knew that was Plaintiff called to testify against members of the GTTF for Racketeering and other police corruption offenses in his line of duty.

3.      TFO Defendant Patterson furthermore knew that Plaintiff was only out by himself with disgraced GTTF Officer Jenkins one time (and it had nothing to do with the underlying case or any other case where police misconduct was suspected) to perform his officially assigned duties as a DEA Task Force Officer; Plaintiff was on the scene solely to a transport large sum of money seized by authorized law enforcement for Federal adoption; TFO Defendant Patterson even further knew that the remaining two times Plaintiff responded to the same location as Jenkins it was for the same reason, and during those times, Plaintiff was accompanied by either additional DEA Task Force Officers or additional DEA Task Force officers and a DEA supervisor; more importantly, TFO Defendant Patterson knew that no illegal activity or police wrongdoing directed at Plaintiff were alleged to have occurred at any of those three locations or during any of the aforementioned three times.

4.      More specifically, TFO Defendant Patterson knew Plaintiff had never been suspected or accused of misappropriating money during any of the times aforementioned; and TFO Defendant Patterson knew that Plaintiff, as a DEA Task Force Officer, did not work with GTTF Officer Jenkins nor any other GTTF officer at anytime alleged in the December 4, 2020, search warrant or subsequent indictment.

5.      TFO Defendant Patterson additionally falsely averred under oath in his search

4

warrant affidavit dated December 4, 2020, that he and TFO Defendant Jared Stern obtained

evidence of alleged criminal activity from an un-vetted and unverified, single-occasion

confidential informant, Kimberly Campbell; TFOs Defendants Patterson and Stern knew that

Campbell had a motive to be untruthful as she was Plaintiff's openly and notoriously disgruntled

ex-lover who was on a proverbial warpath for Plaintiff because he had gotten engaged to his

current wife despite fathering two children with her without a marriage; Defendant Patterson's

warrant omitted all statements concerning Campbell's credibility, reliability, or experience

(rather than her lack thereof) working as a confidential informant.

6.      According to TFOs Defendants Patterson and Stern, on or about December 3,

2020, Campbell alleged that in April 2016, Plaintiff secreted behind the refrigerator of his

residence $10,000 cash that was purportedly stolen during his transport of a large volume money

seizure; TFO Defendants Patterson and Stern further alleged that Campbell had also seen money

in a shoe box in Plaintiff's basement in the past *described* as "work money" having a value of

less than $100.

7.      TFO Defendant Patterson intentionally misrepresented in his search warrant

affidavit that Campbell resided with Plaintiff until August 2020 when they ended their

relationship (i.e., four months before they filed an  for a search warrant, and four years after the

alleged money seizure) when they in fact knew Campbell and Plaintiff ended their relationship in

August 2019 when Campbell moved out (i.e., a year and four months before they filed an  for a

search warrant, and 5 years and four months after the alleged money seizure); the August 2019,

departure/break up information was specifically provided to TFOs Defendants Patterson and

Stern by Campbell during her December 3, 2020, interview with them. This material information

was intentionally omitted from Patterson's search warrant affidavit as well.

8.    TFO Defendant Patterson knew that if he averred that Campbell moved out of Plaintiff's home in 2019 rather than 2020, the affidavit for the search warrant of Plaintiff's house would have lacked sufficient temporal proximity between the alleged crime or criminal subject matter and the information received; thus, it would have been DENIED as the warrant affidavit could not objectively support the probable cause determination required to obtain an actual warrant.

9.    TFOs Defendants Patterson and Stern failed to conduct any independent investigation of the information provided by Campbell regarding her stolen money allegation, and when coupled with the fact that TFO Defendant intentionally omitted any previous experience with or knowledge of Campbell's credibility or reliability despite possessing acute knowledge of the fact that: (a) Campbell was Plaintiff's disgruntled ex-lover and (b) they were embroiled in an ongoing child custody dispute; these glaring omissions were very important for making a probable cause determination for a search warrant because they provided Campbell with a motive to produce false information; her intent would be to get Plaintiff arrested and falsely charged and thereby gain an unfair advantage in the parties' impending custody case.

10.    Notwithstanding the aforementioned, according to TFO Defendants Patterson and Stern, Campbell, further alleged in their December 3, 2020, interview that in the Fall of 2019, a so-called unidentified "mutual associate" of theirs, Larry Evans, was asked to remove some "junk" from Plaintiff's garage to be later "destroyed;" according to Campbell, Evans removed the junk but returned it a few days later because he observed two large trash bags containing items labeled "evidence" as well as files that appeared to belong to the Baltimore City police

department. The bags were placed under Plaintiff's deck in his backyard.

11.    Although Campbell, who was not present at Plaintiff's home at the time Evans made any observations nor had been to Plaintiff's home since August 2019, TFOs Defendants Patterson's and Stern's search warrant affidavit alleged without any investigation, that no one else made any further attempt to remove the junk outside of Plaintiff's home until police took possession of the bags on December 4, 2020.

12.    Evans was never interviewed to verify the information Campbell provided prior to filing the affidavit for search & seizure warrant nor prior to seeking Plaintiff's indictment; nor had Campbell ever reported to TFOs Defendants Patterson and Stern that she had personally seen the two bags containing items that said evidence contained what appeared to be 'police department case files'" –this information too was omitted from the search warrant affidavit.

13.    TFOs Defendants Patterson deliberately omitted the aforementioned information from the warrant affidavit to mislead the magistrate judge to: (a) assign credibility to Campbell's unverified and uncorroborated information concerning the theft of federally 'seized money', and (b) further ensure that the magistrate's decision-making process was tainted by the notion that Plaintiff was connected to the disgraced GTTF –despite TFOs Defendants Patterson and Stern having no information to connect Plaintiff's alleged conduct with GTTF's or any of its members.

14.    Despite these intentional and glaring omissions, TFO Defendant Patterson falsely alleged further in his search warrant affidavit that he had _not_ "excluded any information known to [him] which would defeat the determination of probable cause", knowing that statement was untrue.

15.    TFO Defendant Patterson's false search warrant affidavit combined with the

false grand jury testimony of TFOs Defendants Patterson and/or Stern which repeated the sum and substance of the allegations contained in TFO Defendant Patterson's search warrant affidavit, led Plaintiff to be federal indicted based upon allegations and sworn affidavits that were knowingly false, reckless, and intentionally misleading.

16.     Additionally, TFOs Defendants Patterson and/or Stern provided false grand jury and trial testimony alleging that on or about April 8, 2016, Plaintiff stole $9,775 from a $2,428,900 large money seizure during the transport of said money from the crime scene to the DEA's office; TFOs Defendants Patterson and/or Stern further falsely alleged that: (a) Plaintiff ultimately secreted the money behind the refrigerator in his home in April 2016, and (b) on or about April 23, 2016, Plaintiff used $295 of the allegedly stolen money to purchase a pair of shoes for Campbell at a Neiman Marcus store in King of Prussia, Pennsylvania --despite TFOs Defendants Patterson and/or Stern possessing the receipt for the shoes that reflected that they were purchased by Campbell and shipped by her to her parent's address.

17.     TFOs Defendants Patterson and Stern, prior to seeking Plaintiff's indictment, further failed to verify or so much as interview the alleged drug dealer, Enixae Hernandez-Barba, from whom the large volume of money was seized to determine whether he believed the money turned over from the seizure was less than the amount he had in his possession; no agent or officer on the scene knew how much money was recovered because no one counted it; large volume money seizures are required to be counted in the DEA office.

18.     When Hernandez-Barba (a) never accused anyone of stealing the money seized; (b) had no idea how much money was seized at the scene by law enforcement officials; (c) never counted the money before it was seized, and therefore (d) could not and did not affirm

that the amount of the money seized was different than the amount recorded by DEA officials; Hernandez-Barba further testified that the hand-written document TFOs Defendants Patterson and Stern alleged to be currency totals were not the currency totals from the federally seized money in question, and that he did not know what the numbers on the document represented.

19.     Based upon the false allegations, reckless disregard for the truth, and intentional and/or reckless omissions intended to mislead the magistrate and grand jury by TFOs Defendants Patterson and Stern as mentioned throughout this Complaint and Demand for Jury Trial, on or about April 9, 2021, and September 30, 2021, Plaintiff was falsely charged with two counts of Theft of Government Property, and one count of False Statement to Federal Law Enforcement; on or about January 30, 2023, the charges were resolved in Plaintiff's favor as he was found "Not Guilty" of all counts by a Federal jury.

20.     As a direct and proximate of TFOs Defendants Brian Patterson's and Jared Stern's intentionally false, misleading, malicious, reckless, and/or grossly negligent conduct, Plaintiff suffered a false arrest, indictment, malicious prosecution, State and Federal Constitutional rights violations; and will Plaintiff continue to suffer mental and emotional distress, placement on the Baltimore City State's Attorney's "Do Not Call" list where his name remains today, denial of a Letter of Good Standing from the Baltimore City Police Department, loss of privileges, benefits, and immunities as a law enforcement officer, as well as other harms more fully described below; it is for all of the above reasons, Plaintiff brought the instant civil action.

## COUNT I

### 42 U.S.C. 1983

*Plaintiff v. Defendants Patterson and Stern*

Plaintiff adopts all of the facts and allegations contained in paragraphs 1-20 as if fully alleged below; Plaintiff further alleges the following:

21.     The Fourth Amendment provides that the right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

22.     Section 1983 states that every person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the party injured in an action at law . . . for redress.

23.     TFOs Defendants Patterson and Stern violated Plaintiff's clearly established rights at the time, under the Fourth and Fourteenth Amendments, when they caused Plaintiff to be falsely arrested and imprisoned, falsely indicted Plaintiff with two felony crimes, to wit: Theft of Government Property and False Statement to Federal Law Enforcement, and maliciously prosecuted, under color of State law, without probable cause or legal justification; TFOs Defendants Patterson and Stern further violated Plaintiff's clearly established rights at the time, when they used sworn testimony in their warrant affidavit, grand jury testimony, and trial testimony they knew was either false, and/or a reckless disregard for the truth, in order to secure Plaintiff's false arrest, subsequent indictment, and malicious prosecution, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

24.     TFOs Defendants Patterson and Stern violated Plaintiff's clearly established rights at the time, under the Fourth and Fourteenth Amendments, by omitting information that was

material and necessary to the finding of probable cause to secure a search warrant for Plaintiff's residence on December 4, 2020, his subsequent indictment, and malicious prosecution; under the circumstances presented here, *but for* the information intentionally or recklessly omitted and/or averred untruthfully in the search warrant affidavit, there would <u>not</u> have been a fair probability that any contraband or evidence of the crime would have been found in Plaintiff's home, and the search warrant affidavit would <u>not</u> have been GRANTED.

25.    For example, some of the aforementioned false, misleading, and/or recklessly omitted information from TFOs Defendant Patterson's search warrant affidavit and Defendant Stern's and/or Patterson's grand jury testimony (upon information and belief) were as follows:

(a)    Plaintiff was <u>*not*</u> involved in or a part of the notorious GTTF nor their illegality and wrongful conduct that lead to the arrest, Federal indictment, conviction, and sentencing of a large number of its members **(Omitted Plaintiff's un-involvement with GTTF, false and/or misleading information to the contrary is knowingly false & misleading);**

(b)    TFOs Defendants Patterson and Stern knew but failed to disclose that Confidential Informant, Kimberly Campbell, moved out of Plaintiff's home in August <u>2019</u> rather than August 2020, and they further knew but failed to disclose that Campbell had not been inside Plaintiff's home ever since moving out --which was almost a year and a half prior to their making the affidavit for the search warrant and four years after the alleged wrongful conduct; TFOs Defendants Patterson and Stern knew Campbell advised them both of this fact during their December 3, 2020 interview with her; that given the fungible nature of U.S. currency in its cash form, it would be unreasonable for any reasonable person or law enforcement officer to believe that $10,000 in cash from purloined drug proceeds would have remained behind a refrigerator in Plaintiff's residence for almost a year and a half after its placement **(Omitted 2019 material information, 2020 information is knowingly false);**

(c)    TFOs Defendants Patterson and Stern furthermore knew that Campbell had no personal or empirical knowledge that Plaintiff kept the federally seized money in his home behind the refrigerator that was allegedly taken as part of the April 8, 2016, drug bust –four years earlier, where Plaintiff and fellow DEA Task Force agents seized and transported to the DEA office for

inventorying a large volume of money (**Omitted material information**);

      (d)    TFO Defendants Patterson maliciously, intentionally, and falsely misrepresented in the warrant affidavit, and upon information and belief, TFO Defendant Stern, maliciously, intentionally, and falsely misrepresented in his grand jury testimony, that Campbell moved out of Plaintiff's residence in 2020 rather than 2019, because they both knew if they had told the truth that she moved out in 2019, the temporal proximity between the alleged crime or criminal subject matter and the information received would have been unable to support the probable cause determination required for them to be granted a search warrant, to secure a subsequent indictment by the grand jury, and have Plaintiff maliciously prosecuted (**Omitted material information**);

      (e)    Confidential Informant Kimberly Campbell was Plaintiff's disgruntled ex-lover who was enraged because Plaintiff fathered two children by Campbell but they did not marry; and after they broke up in August 2019, Plaintiff became involved with another woman with whom he ultimately married; Campbell was further disgruntled because she and Plaintiff were involved in an on-going bitter child custody case over their children with no end in sight; all of these facts gave Campbell a motive to give false testimony to lead to Plaintiff's wrongful arrest, mis-indictment, and malicious prosecution; it gave Campbell a distinct advantage in their child custody case (**Omitted material information**);

      (f)    TFOs Defendants Patterson and Stern made no statements in their warrant or grand jury testimony (upon information and belief) about Campbell's reliability or experience as a Confidential Informant, nor did they verify any of the material information provided for which she had *personal* knowledge (**Omitted material information**);

      (g)    TFO Defendant Patterson never disclosed in his search warrant affidavit nor did TFOs Defendants Patterson and/or Stern ever disclose to the grand jury that the alleged drug dealer, Enixae Hernandez-Barba, from whom the large sum of money ($2,419,125) was seized never counted the money to determine its amount, nor did he have any reason to believe some of the money was stolen by anyone or that the amount seized by the DEA officials was any less than the amount that existed at the scene; in other words, Hernandez-Barba, never accused the DEA nor anyone else of stealing $10,000, $9,775, nor any other amount of money from the $2,419,125 the DEA seized from him (**Omitted material information**);

      (h)    TFO Defendants Patterson and/or Stern testified falsely, or with a reckless disregard for the truth, that they recovered or seized a hand-written document indicating that the money recovered from the John Avenue address was

$2,428,900 before it was transported by Plaintiff being followed by another DEA agent to the DEA office; this allegation was false, misleading, and/or a reckless disregard for the truth **(material was information knowingly false)**.

26.    In a case such as the underlying criminal case, (a) where the only evidence identifying Plaintiff as a wrongdoer in the affidavit or before the grand jury came from informant Campbell who had not been determined to be reliable; and (b) where the underlying affidavit and essence of the case was dependent upon the credibility of informant Campbell who was the sole producer of information for the warrant affidavit, all of the information omitted, misleading, or falsely stated in TFO Defendant Patterson's search warrant affidavit, and all of the information omitted, misleading, or falsely stated TFO Defendant Stern's grand jury testimony, respectively, was deliberate to prevent a neutral and detached magistrate, and empaneled grand jury, from being able to accurately assess the reliability, veracity, credibility, and thus the materiality of the informant Campbell's statements for purposes of making a probable cause determination.

27.    The information contained in ¶26 (a)-(h) was exactly the kind of information a judge or grand jury would wish to know because that was the kind and character of information that would have negated probable cause *en toto*; in other words, with the affidavit's false, misleading, and omitted materials set to one side, the remaining content of the affidavit was insufficient to establish probable cause.

28.    TFOs Defendants Patterson's and Stern's false & misleading statements, and omissions above described demonstrated an intentional and/or reckless disregard for its effect upon the warrant affidavit process, the grand jury process, and the fate of Plaintiff's liberty; more importantly, it violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

29.     As a direct and proximate cause of Defendants Brian Patterson's and Jared Stern's wrongful conduct mentioned above, Plaintiff suffered a false arrest, imprisonment, and indictment; fear, pain & suffering, agony, humiliation, embarrassment, loss or diminution of reputation, muscle stiffness, aches, spasms, and cramps; headaches, forgetfulness, loss of appetite; loss of front pay & back pay, financial and job opportunities, placement on Baltimore City State's Attorney's "Do Not Call" list where his name remains today, denial of a Letter of Good Standing from the Baltimore City Police Department, loss of temporary custody of his children, and all the privileges and immunities afforded retired law enforcement officers; additionally Plaintiff suffered emotional distress, mental angst, mental anguish, sleep disruption, weight loss, nausea, vomiting, nightmares, PTSD, depression, flashbacks, unwanted memories, heart palpitations, anxiety, panic attacks, isolation, avoidance of activities that remind him of these events, negative thoughts about himself and the world, feeling "on edge", paranoia, easy startling, anger, shame, difficulty feeling positive emotions and concentrating, triggering by the sight of BPD/FBI men and women in uniform.

## COUNT II

Article 24 & 26 Maryland Declaration of Rights

*Plaintiff v. Defendants Patterson and Stern*

Plaintiff adopts all of the facts and allegations contained in paragraphs 1-29 as if fully alleged below; Plaintiff further alleges the following:

30.     Article 24 of the Maryland Declaration of Rights provides that no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his

14

peers, or by the Law of the land.

31.    Article 26 of the Maryland Declaration of Rights provides That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

33.    TFOs Defendants Patterson and Stern violated Plaintiff's clearly established rights at the time, under the Articles 24 & 26 of the Declaration of Rights when they caused Plaintiff to be falsely arrested and imprisoned, falsely indicted Plaintiff with two felony crimes, to wit: Theft of Government Property and False Statement to Federal Law Enforcement, and maliciously prosecuted, under color of State law, without probable cause or legal justification; Defendant further violated Plaintiff's clearly established rights at the time when they used sworn testimony in their warrant affidavit, grand jury testimony, and trial testimony that they actually knew was either false, misleading, and/or a reckless disregard for the truth, in order to secure Plaintiff's false arrest, subsequent indictment, and malicious prosecution in violation of Plaintiff's rights under Articles 24 & 26.

34.    TFOs Defendants Patterson and Stern violated Plaintiff's clearly established rights at the time under Articles 24 & 26 by omitting information that was material and necessary to the finding of probable cause to secure a search warrant for Plaintiff's residence on December 4, 2020, subsequent indictment on April 9, 2021, and malicious prosecution; TFOs Defendants Patterson and Stern knew there was no fair probability that any contraband or evidence of the crime would be found at Plaintiff's home or that Plaintiff had committed any crime(s) and none

15

was found;

35.     Some of the false, misleading, and/or omitted information from TFOs Defendant

Patterson affidavit for search warrant and Defendant Stern's and/or Patterson's grand jury

testimony (upon information and belief) was as follows:

(a)     Plaintiff was *not* involved in or a part of the notorious
GTTF nor their illegality and wrongful conduct that lead to the arrest, Federal
indictment, conviction, and sentencing of a large number of its members
**(Omitted Plaintiff's un-involvement with GTTF, false and/or misleading
information to the contrary is knowingly false & misleading);**

(b)     TFOs Defendants Patterson and Stern knew but failed to
disclose that Confidential Informant, Kimberly Campbell, moved out of Plaintiff's
home in August <u>2019</u> rather than August 2020, and they further knew but failed to
disclose that Campbell had not been inside Plaintiff's home ever since moving out
--which was almost a year and a half prior to their making the affidavit for the
search warrant and four years after the alleged wrongful conduct; TFOs
Defendants Patterson and Stern knew Campbell advised them both of this fact
during their December 3, 2020 interview with her; that given the fungible nature
of U.S. currency in its cash form, it would be unreasonable for any reasonable
person or law enforcement officer to believe that $10,000 in cash from purloined
drug proceeds would have remained behind a refrigerator in Plaintiff's residence
for almost a year and a half after its placement **(Omitted 2019 material
information, 2020 information is knowingly false);**

(c)     TFOs Defendants Patterson and Stern furthermore knew
that Campbell had no personal or empirical knowledge that Plaintiff kept the
federally seized money in his home behind the refrigerator that was allegedly
taken as part of the April 8, 2016, drug bust –four years earlier, where Plaintiff
and fellow DEA Task Force agents seized and transported to the DEA office for
inventorying a large volume of money **(Omitted material information);**

(d)     TFO Defendants Patterson maliciously, intentionally, and
falsely misrepresented in the warrant affidavit, and upon information and belief,
TFO Defendant Stern, maliciously, intentionally, and falsely misrepresented in his
grand jury testimony, that Campbell moved out of Plaintiff's residence in 2020
rather than 2019, because they both knew if they had told the truth that she moved
out in 2019, the temporal proximity between the alleged crime or criminal subject
matter and the information received would have been unable to support the
probable cause determination required for them to be granted a search warrant, to

secure a subsequent indictment by the grand jury, and have Plaintiff maliciously prosecuted **(Omitted material information)**;

(e)     Confidential Informant Kimberly Campbell was Plaintiff's disgruntled ex-lover who was enraged because Plaintiff fathered two children by Campbell but they did not marry; and after they broke up in August 2019, Plaintiff became involved with another woman with whom he ultimately married; Campbell was further disgruntled because she and Plaintiff were involved in an on-going bitter child custody case over their children with no end in sight; all of these facts gave Campbell a motive to give false testimony to lead to Plaintiff's wrongful arrest, mis-indictment, and malicious prosecution; it gave Campbell a distinct advantage in their child custody case **(Omitted material information)**;

(f)     TFOs Defendants Patterson and Stern made no statements in their warrant or grand jury testimony (upon information and belief) about Campbell's reliability or experience as a Confidential Informant, nor did they verify any of the material information provided for which she had *personal* knowledge **(Omitted material information)**;

(g)     TFO Defendant Patterson never disclosed in his search warrant affidavit nor did TFOs Defendants Patterson and/or Stern ever disclose to the grand jury that the alleged drug dealer, Enixae Hernandez-Barba, from whom the large sum of money ($2,419,125) was seized never counted the money to determine its amount, nor did he have any reason to believe some of money was stolen by anyone or that the amount seized by the DEA officials was any less than the amount that existed at the scene; in other words, Hernandez-Barba, never accused the DEA nor anyone else of stealing $10,000, $9,775, nor any other amount of money from the $2,419,125 the DEA seized from him **(Omitted material information)**;

(h)     TFO Defendants Patterson and/or Stern testified falsely, or with a reckless disregard for the truth, that they recovered or seized a hand-written document indicating that the money recovered from the John Avenue address was $2,428,900 before it was transported by Plaintiff being followed by another DEA agent to the DEA office; this allegation was false, misleading, and/or a reckless disregard for the truth **(material was information knowingly false)**.

36.     In a case such as the underlying criminal case, where the only evidence identifying

Plaintiff as a wrongdoer in the search warrant affidavit or before the grand jury came from

information allegedly provided from informant Campbell; where informant Campbell lacked any

past experience providing information to TFOs Defendants Patterson and Stern as she had never been vetted to determine her credibility or reliability; and where the underlying case depended upon the credibility of informant Campbell who was the sole producer of information for the warrant affidavit, all of the information omitted from TFO Defendant Patterson's search warrant and (upon information and belief) all the false statements made by TFOs Defendants Patterson and/or Stern to the grand jury, prevented a neutral and detached magistrate, and the empaneled grand jury, from being able to accurately assess the reliability, veracity, and thus materiality and/or significance of informant Campbell's statements made in order to determine whether probable cause truly existed; therefore, the affidavit for the search warrant violated Plaintiff's rights under Articles 24 & 26 of the Maryland Declaration of Rights because the true statements omitted and the false statements presented were both material to the court's and grand jury's decision to grant the warrant, subsequent indictment, and malicious prosecution, respectively.

37.    The information contained in ¶26 (a)-(h) was exactly the kind of information a judge, and/or grand jury, would wish to know because it would have negated probable cause *en toto* had it been subject to the court's or grand jury's consideration; in other words, with the affidavit's false, misleading, and omitted materials set to one side, the remaining content of the affidavit would have been insufficient to establish probable cause.

38.    TFOs Defendants Patterson's and Stern's intentionally false, misleading, and reckless statements and omissions above described demonstrated their intentional and/or reckless disregard for its effect upon the warrant process, the grand jury process, and fate of Plaintiff's liberty.

39.    As a direct and proximate cause of Defendants Brian Patterson's and Jared Stern's

violation of Plaintiff's rights under Articles 24 & 26 as mentioned above, Plaintiff suffered a false arrest, imprisonment, and indictment; fear, pain & suffering, agony, humiliation, embarrassment, loss or diminution of reputation, muscle stiffness, aches, spasms, and cramps; headaches, forgetfulness, loss of appetite; loss of front pay & back pay, financial and job opportunities, placement on Baltimore City State's Attorney's "Do Not Call" list where his name remains today, denial of a Letter of Good Standing from Baltimore City Police Department, loss of temporary custody of his children, and all the privileges and immunities afforded retired law enforcement officers; additionally Plaintiff suffered emotional distress, mental angst, mental anguish, sleep disruption, weight loss, nausea, vomiting, nightmares, PTSD, depression, flashbacks, unwanted memories, heart palpitations, anxiety, panic attacks, isolation, avoidance of activities that remind him of these events, negative thoughts about himself and the world, feeling "on edge", paranoia, easy startling, anger, shame, difficulty feeling positive emotions and concentrating, triggering by the sight of BPD/FBI men and women in uniform.

## COUNT III

Malicious Prosecution

*Plaintiff v. Defendants Patterson and Stern*

Plaintiff adopts all of the facts and allegations contained in paragraphs 1-39 as if fully alleged below; Plaintiff further alleges the following:

40.    TFOs Defendants Patterson and Stern instituted and continued a criminal proceeding against the Plaintiff without probable cause, with malice, and/or with a motive other than to bring Plaintiff to justice when Defendant Patterson applied for a search warrant replete with material omissions and false & misleading statements that, *had* they been included and

19

truthfully reported in the warrant affidavit and subsequent grand jury testimony, they would have negated probable cause for Plaintiff's arrest, imprisonment, booking, subsequent indictment charging Plaintiff with Theft of Government Property and False Statement to Law Enforcement, and malicious prosecution, under case number 1:21-CR-00089-CCB, where Plaintiff faced 15 years in Federal prison.

41.    TFO Defendant Patterson  actually knew, prior to completing under oath the affidavit for a search warrant and TFOs Defendant Patterson and/or Stern knew (upon information and belief), prior to testifying before a grand jury with glaring omissions of facts and false & misleading statements, that they had no legitimate basis for causing Plaintiff to be falsely arrested, booked, indicted, or prosecuted when they did not have probable cause, good faith, or legal justification for initiating a criminal procedure against him in the first place; TFOs Defendants Patterson and Stern actually knew that Plaintiff had not committed any crimes.

42.    On January 30, 2023, the aforementioned criminal proceeding against Plaintiff terminated in his favor when a Federal jury found him "Not Guilty" of all of the charges in his federal indictment.

43.    However, before Plaintiff's case reached this point, he was forced to hire his own lawyer, retire early from his job as a BPD DEA Task force Officer that he really loved and made a comfortable living –to protect his pension, and face other sanctions directly and proximately caused by TFOs Defendants Patterson and Stern improper and wrongful conduct.

44.    The malice driving TFOs Defendants Patterson's and Stern's malicious prosecution of Plaintiff was born of ill-will, spite, and an intent to rebuke and disgrace Plaintiff's decades of service to BPD and the DEA.

45.     As a further direct and proximate cause of TFOs Defendants Patterson's and

Stern's Malicious Prosecution, Plaintiff suffered a false arrest, imprisonment, and indictment;

fear, pain & suffering, agony, humiliation, embarrassment, loss or diminution of reputation,

muscle stiffness, aches, spasms, and cramps; headaches, forgetfulness, loss of appetite; loss of

front pay & back pay, financial and job opportunities, loss of temporary custody of his children,

and all the privileges and immunities afforded retired law enforcement officers; additionally

Plaintiff suffered emotional distress, mental angst, mental anguish, sleep disruption, weight loss,

nausea, vomiting, nightmares, PTSD, depression, flashbacks, unwanted memories, heart

palpitations, anxiety, panic attacks, isolation, avoidance of activities that remind him of these

events, negative thoughts about himself and the world, feeling "on edge", paranoia, easy

startling, anger, shame, difficulty feeling positive emotions and concentrating, triggering by the

sight of BPD/DEA men and women in uniform.

## **COUNT VI**

Intentional Infliction of Emotional Distress

*Plaintiff v. Defendants Patterson and Stern*

Plaintiff adopts all of the facts and allegations contained in paragraphs 1-45 as if fully

alleged below; Plaintiff further alleges the following:

46.     TFO Defendant Patterson knowingly possessed and omitted critical material

information from the affidavit for a search warrant that was "sourced" solely by an unverified,

disgruntled informant, Kimberly Campbell, with no history of reliability or experience as a

confidential informant, and who had a motive to provide false information to get the upper-hand

in a child custody case against Plaintiff; that had this information been presented to the

magistrate where as here, witness credibility was the key component to the probable cause

determination, and had the omitted and truthful information been produced, it would have

undoubtedly negated probable cause to grant the warrant; TFOs Defendants Patterson's and

Stern's failure to include this information in their warrant affidavit and testimony to the grand

jury (upon information and belief) constituted conduct that was intentional and/or reckless;

47.    TFOs Defendants Patterson's and Stern's conduct was extreme and outrageous

not only for the aforementioned reasons, but given the fact that the U.S. Attorney has a 92%

conviction-rate, and it was going after Plaintiff with the full gravitas, vast resources, and

imprimatur of the U.S.A., Plaintiff was in very serious danger of going to jail for up to 15 years

as a law enforcement officer --for a crime he did not commit.

48.    TFO Defendant Patterson's and/or Stern's grand jury testimony (upon information

and belief) contained various omissions and false & misleading statements identified in ¶¶26 (a)-

(h), and 35 (a)-(h) not only constituted conduct that was extreme and outrageous, but it was also

intentional and/or reckless.

49.    TFOs Defendants Patterson and Stern engaged in said conduct with a desire to

inflict upon Plaintiff severe emotional distress; TFOs Defendants Patterson and Stern actually

knew that such distress would be substantially certain to result from the conduct alleged in

throughout this Count and Complaint; and/or TFOs Defendants Patterson and Stern acted

recklessly in deliberate disregard of a high degree of probability that emotional distress would

follow their conduct identified in this Count and through out this Complaint.

50.    As a direct and proximate cause of Defendants Intentional Infliction of Emotional

Distress, Plaintiff suffered a false arrest, imprisonment, and indictment; fear, pain & suffering,

agony, humiliation, embarrassment, loss or diminution of reputation, muscle stiffness, aches,

spasms, and cramps, headaches, forgetfulness, loss of appetite, loss of front pay & back pay,

financial and job opportunities, placement on Baltimore City State's Attorney's "Do Not Call"

list where his name remains today, denial of a Letter of Good Standing from Baltimore City

Police Department, loss of temporary custody of his children, and all the privileges and

immunities afforded retired law enforcement officers; emotional distress, mental angst, mental

anguish, sleep disruption, weight loss, nausea, vomiting, nightmares, PTSD, depression,

flashbacks, unwanted memories, heart palpitations, anxiety, panic, isolation, avoidance of

activities that remind her of these events, negative thoughts about herself and the world,"on

edge" feelings, paranoia, easy startling, anger, shame, difficulty feeling positive emotions and

concentrating, triggering by the sight of BPD/DEA men and women in uniform.

     **WHEREFORE**, Plaintiff Ethan Glover a judgment against TFOs Defendants Brian

Patterson and Jared Stern, jointly, and severally in the form of compensatory damages, punitive

damages where applicable in an amount that exceeds $75,000, attorneys fees, and such other and

further relief the court deems fair and just.

     Respectfully,

J. Wyndal Gordon
Attorney ID#:  9506210156
**THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**
20 South Charles Street,
Suite 400
Baltimore, Maryland 21201
(410) 332-4121
jwgaattys@aol.com
Attorney for Plaintiff Glover

/s/ _[signature]_

Raouf Abdullah, Esq.
Attorney ID#: 0112190001
**RMA & ASSOCIATES, LLC**
14714 Main Street, First Floor
Upper Marlboro, MD 20772
(301) 979-7427
rma@rmalawfirm.com
Co-Counsel for Plaintiff Glover

IN THE CIRCUIT COURT FOR <u>Baltimore City</u>
▾

(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

  *Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT   **CASE NUMBER** _____

(Clerk to insert)

**CASE NAME:** <u>Ethan Glover</u> vs. <u>Brian Patterson, et al.</u>

<u>Plaintiff</u>          <u>Defendant</u>

**PARTY'S NAME:** <u>Ethan Glover</u>   **PHONE:** _____

**PARTY'S ADDRESS:** <u>4 Pennyborough Court Baltimore, MD 21136</u>

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** <u>J. Wyndal Gordon</u>   PHONE: <u>410.332.4121</u>

**PARTY'S ATTORNEY'S ADDRESS:** <u>20 S. Charles St. Suite 400 Baltimore, MD 21201</u>

**PARTY'S ATTORNEY'S E-MAIL:** <u>jwgaattys@aol.com</u>

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  4 days

### PLEADING TYPE

**New Case:** ☒ Original    ☐ Administrative Appeal    ☐ Appeal

**Existing Case:** ☐ Post-Judgment   ☐ Amendment

*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☒ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☒ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 12/2022)          Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☐ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|

☐ Under $10,000        ☐ $10,000 - $30,000        ☐ $30,000 - $100,000        ☑ Over $100,000

☐ Medical Bills $ _____    ☐ Wage Loss $ _____    ☐ Property Damages $ _____

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation        ☑ Yes ☐ No        C. Settlement Conference        ☐ Yes ☐ No
B. Arbitration        ☐ Yes ☐ No        D. Neutral Evaluation        ☐ Yes ☐ No

| SPECIAL REQUIREMENTS |
|---|

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

| ESTIMATED LENGTH OF TRIAL |
|---|

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

**(Case will be tracked accordingly)**

☐ 1/2 day of trial or less        ☐ 3 days of trial time
☐ 1 day of trial time        ☑ More than 3 days of trial time
☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of        ☑ **Standard** - Trial within 18 months of
   Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❑ **Expedited -** Trial within 7 months of     ❑ **Standard -** Trial within 18 months of

Defendant's response                              Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❑ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❑ Civil-Short | Trial 210 days from first answer. |
| ☑ Civil-Standard | Trial 360 days from first answer. |
| ❑ Custom | Scheduling order entered by individual judge. |
| ❑ Asbestos | Special scheduling order. |
| ❑ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ❑ Tax Sale Foreclosures | Special scheduling order. |
| ❑ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❑ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☑ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❑ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❑ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

1/29/25
_____
Date

20 S. Charles St Suite 400
_____
Address

Baltimore        MD        21201
_____
City          State        Zip Code

_____
Signature of Attorney / Party        Attorney Number

J. Wyndal Gordon
_____
Printed Name

**CC-DCM-002** (Rev. 12/2022)              Page 3 of 3



**CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

CIVIL DIVISION

111 N. Calvert Street

Baltimore, Maryland 21202

Info: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:** BRIAN PATTERSON
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY
BALTIMORE CITY POLICE TASK FORCE OFFICER
███████████

|  |  |
|---|---|
| **Case Number:** | C-24-CV-25-000928 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**ETHAN GLOVER VS. BRIAN PATTERSON, ET AL.**

Issue Date: 1/31/2025

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

ETHAN GLOVER
4 Pennyborough Court
Baltimore, MD  21136

This summons is effective for service only if served within 60 days after the date it is issued.

*Xavier Conaway*

Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).



**CIRCUIT COURT FOR BALTIMORE CITY,**
**MARYLAND**
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202

Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:** JARED STERN
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY
BALTIMORE CITY POLICE TACK FORCE OFFICER
601 EAST FAYETTE STREET
BALTIMORE, MD 21202

**Case Number:**     <mark>C-24-CV-25-000928</mark>
**Other Reference Number(s):**
**Child Support Enforcement Number:**

**ETHAN GLOVER VS. BRIAN PATTERSON, ET AL.**

Issue Date: 1/31/2025

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

ETHAN GLOVER
4 Pennyborough Court
Baltimore, MD  21136

This summons is effective for service only if served within 60 days after the date it is issued.

*Xavier A. Conaway*

Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).