## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ETHAN GLOVER,

    Plaintiff,

v.

BRIAN PATTERSON ET AL.,

    Defendants.

Civil No. 25-1679-BAH

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Ethan Glover ("Glover" or "Plaintiff") brought suit in the Circuit Court for Baltimore City against two Federal Bureau of Investigation ("FBI") Task Force Officers, Brian Patterson ("Patterson") and Jared Stern ("Stern"), in their individual and official capacities (collectively "Defendants"). ECF 1 (notice of removal); ECF 5 (original complaint). Defendants removed the action to this Court pursuant to 28 U.S.C. § 1331. *See* ECF 1. Glover's operative complaint contains one *Bivens*[1] count arising out of Defendants' investigation into Glover for theft of government property and making false statements to law enforcement. ECF 14 (amended complaint). Pending before the Court is Defendants' motion to dismiss. ECF 17. Glover filed an opposition, ECF 20, as well as a motion to strike the affidavits attached to Glover's opposition,[2] ECF 21. Defendants filed a reply, ECF 26, and Glover filed a motion for leave to file a surreply,

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Because the Court concludes that the operative complaint should be dismissed on bases unrelated to Glover's motion to strike, the Court denies that motion as moot.

ECF 29. All filings include memoranda of law and most include exhibits.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Glover's motion to strike is **DENIED as moot,** Glover's motion to file a surreply is **DENIED,**[4] and Defendants' motion to dismiss is **GRANTED.** However, Glover will be granted leave to amend his complaint to re-assert any 42 U.S.C. § 1983 claim(s) against Defendants within 21 days of the issuance of this opinion and the implementing order to follow.

## I.   **BACKGROUND**

### A.   *Factual Background*

The Court accepts as true all well-pleaded facts in Glover's complaint and draws all reasonable factual inferences in his favor. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). At all times relevant to the complaint, Patterson and Stern worked as officers for the Baltimore Police Department ("BPD") and were on assignment with the Public Integrity Section of the FBI as Task Force Officers ("TFO"). ECF 14, at 2 ¶ 2. Glover is also a former BPD officer, and he was assigned as a TFO for the Drug Enforcement Agency's ("DEA's") Group 51, a unit responsible for investigating violent drug traffickers. *Id.* at 1–2 ¶ 1. Defendants investigated Glover for theft of government property and making false statements to federal law enforcement related to the illegal conduct "of the infamous Gun Trace Task Force," or "GTTF,"

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[4] Though surreplies are generally not permitted under Local Rule 105.2(a), "the Court in its discretion may allow a party to file a surreply." *Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citation omitted). "This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Id.* Because Glover will have an opportunity to respond to the arguments Defendants assert in reply by way of opposition to any future motion to dismiss a second amended complaint, the Court denies Glover leave to file a surreply here.

2

which was "led by the infamous BPD Officer, Wayne Jenkins." *Id.* at 4 ¶ 6. Defendants apparently believed Glover "had purloined monies seized in a drug bust/raid" carried out by members of the GTTF. *Id.* Defendants' investigation of Glover included the swearing out and execution of a search warrant at Glover's home. *Id.*

Glover argues that Patterson made "false & misleading allegations" about Glover's involvement with the GTTF on December 4, 2020 in his swearing out of the search warrant for Glover's house. *Id.* Glover alleges that Patterson "knew that Plaintiff had never been a part of GTTF," knew that Glover and Jenkins "were merely classmates in the police academy," "knew that Plaintiff only three times in his entire career responded to addresses where Jenkins was present," "knew that each time Plaintiff responded, it was a part of his official duties as a DEA Task Force Officer," and "knew that Plaintiff was called to testify against Jenkins" in Jenkins' criminal trial for police corruption. *Id.* ¶ 7. Glover also alleges that Patterson "knew that no illegal activity or police wrongdoing directed at Plaintiff were alleged to have occurred at any of those three locations or during any of the aforementioned three times," including any suspected misappropriation of money. *Id.* at 5 ¶¶ 8–9.

Defendants also allegedly relied on evidence "from an un-vetted and unverified, single-occasion confidential informant, Kimberly Campbell," and Glover avers Defendants "knew that Campbell had a motive to be untruthful as she was Plaintiff's openly and notoriously disgruntled ex-lover" and they were in an "ongoing child custody dispute." *Id.* at 5 ¶ 10, at 6 ¶ 14. Campbell told Defendants that in April of 2016 "Plaintiff secreted behind the refrigerator of his residence $10,000 cash" that "was purportedly stolen during his transport of a large volume money seizure" and that she had "seen money in a shoe box in Plaintiff's basement in the past described as 'work money' having a value of less than $100." *Id.* at 5 ¶ 11. Campbell also reported in a December

3

2020 interview that "in the Fall of 2019, a so-called unidentified 'mutual associate' of theirs, Larry Evans, was asked to remove some 'junk' from Plaintiff's garage to be later 'destroyed.'" *Id.* at 7 ¶ 15. According to Campbell, Evans returned "two large trash bags containing items labeled 'evidence' as well as files that appeared to belong to the Baltimore City police department," and "[t]he bags were placed under Plaintiff's deck in his backyard." *Id.*

Glover alleges that Patterson "intentionally misrepresented in his search warrant affidavit that Campbell resided with Plaintiff until August 2020" despite knowing that "Campbell and Plaintiff ended their relationship in August 2019 when Campbell moved out," information that was allegedly provided to Defendants "by Campbell during her December 3, 2020, interview with them." *Id.* at 6 ¶ 12. Glover asserts that Patterson knew "if he averred that Campbell moved out of Plaintiff's home in 2019 rather than 2020, the affidavit for the search warrant of Plaintiff's house would have lacked sufficient temporal proximity between the alleged crime or criminal subject matter and the information received." *Id.* ¶ 13. Defendants also apparently "fail[ed] to conduct any independent investigation of the information provided by Campbell" or to interview Evans. *Id.* at 6 ¶ 14, at 7 ¶ 17. Glover also asserts Defendants did not verify information with or interview "the alleged drug dealer, Enixae Hernandez-Barba, from whom the large volume of money was seized to determine whether he believed the money turned over from the seizure was less than the amount he had in his possession." *Id.* at 9 ¶ 22.

According to Glover, Patterson's "false search warrant affidavit combined with the false grand jury testimony of" Defendants, "which repeated the sum and substance of the allegations contained" in the affidavit, "led Plaintiff to be federal[ly] indicted." *Id.* at 8 ¶ 20. The complaint states that Defendants provided false testimony that on "April 8, 2016, Plaintiff stole $9,775 from a $2,428,900 large money seizure during the transport of said money from the crime scene to the

DEA's office" and that Glover "secreted the money behind the refrigerator in his home in April 2016." *Id.* at 8 ¶ 21. Defendants also allegedly testified that on "April 23, 2016, Plaintiff used $295 of the allegedly stolen money to purchase a pair of shoes for Campbell at a Neiman Marcus store in King of Prussia, Pennsylvania," despite Defendants' possession of a receipt reflecting that the shoes "were purchased by Campbell and shipped by her to her parent's address." *Id.*

In early April of 2021, a Federal Grand Jury returned an indictment against Glover, and, on September 30, 2021, a Federal Grand Jury returned a superseding indictment against Glover. *See* ECF 14, at 9 ¶ 24; ECF 17, at 4. Glover was charged "with two counts of Theft of Government Property[] and one count of False Statement to Federal Law Enforcement." ECF 24, at 9 ¶ 24. In January of 2023, Plaintiff was tried and acquitted of the charges in the superseding indictment in federal court. *Id.*

### B.    *Procedural History*

On January 29, 2025, Glover filed a complaint in the Circuit Court for Baltimore City against Defendants. ECF 5, at 1. His original complaint contained four counts alleging claims under the Federal Constitution pursuant to 42 U.S.C. § 1983, as well as under the Maryland Constitution and Maryland common law. *Id.* at 9–23. On May 27, 2025, Defendants removed the case to this Court. *See* ECF 1; ECF 4 (supplement to notice of removal). On June 18, 2025, Glover amended his complaint to include only one count for money damages under *Bivens*. ECF 14, at 10–14. Specifically, Glover alleges that Defendants violated his Fourth and Fourteenth Amendment rights by including misleading or false information and omitting other material information from the affidavit supporting the search warrant issued for Glover's home, as well as for providing false testimony to a grand jury. *See, e.g., id.* at 11 ¶ 29. Glover alleges that he suffered financially and emotionally as a result of Defendants' conduct, and he requests compensatory and punitive damages in an amount exceeding $75,000. *Id.* at 14 ¶ 34. On July 22,

2025, Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) and for lack of jurisdiction under Rule 12(b)(1). *See* ECF 17. That motion is now ripe for resolution.

## II.    LEGAL STANDARD

### A.    *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).[5]

### B.    *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in

---

[5] Defendants bring their motion to dismiss under Rule 12(b)(1) in addition to Rule 12(b)(6). The Court observes that arguments for dismissal based on lack of an implied cause of action under *Bivens* have been made under both Rules 12(b)(1) and 12(b)(6). *See Lackner v. United States*, Civ. No. 22-4951, 2025 WL 314965 (D.N.J. Jan. 28, 2025) (granting defendants' 12(b)(1) motion where claim improperly presented a new *Bivens* context); *Clutts v. Lester*, 676 F. Supp. 3d 698, 704, 710 (N.D. Iowa 2023) (holding extension of *Bivens* context warranted dismissal under Rule 12(b)(6)). Because Defendants' motion to dismiss is brought under both rules, the Court need not decide which rule encapsulates Defendants' *Bivens* challenge.

6

the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    ANALYSIS

Defendants move to dismiss Glover's complaint on three bases. *See* ECF 17-1, at 4.  First, Defendants argue that the case should be dismissed "because it is barred by the statute of limitations." *Id.*  Second, they argue that "Plaintiff's claims present a new *Bivens* context, and *Bivens* should not be expanded to include the allegations in this case." *Id.*  Third, Defendants argue for dismissal because of "absolute and/or qualified immunity." *Id.*  Because the Court agrees that Plaintiff's claim presents a new *Bivens* context where special factors exist counseling hesitation, the Court agrees with Defendants that the complaint should be dismissed on that basis and thus does not reach Defendants' other arguments.

### A.    *Bivens*

"In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), [the Supreme] Court authorized a damages action against federal officials for alleged violations of the Fourth

7

Amendment." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). "In that case and then in two subsequent cases, the Supreme Court allowed plaintiffs alleging certain Fourth, Fifth, and Eighth Amendment violations to proceed under this implied cause of action." *Annappareddy v. Pascale*, 996 F.3d 120, 133 (4th Cir. 2021). "Over the past 42 years, however," the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert*, 596 U.S. at 486. Over that time, "the Supreme Court's approach to implied damage remedies has changed dramatically, to the point that 'expanding the *Bivens* remedy is now a disfavored judicial activity.'" *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Indeed, the Supreme Court has "gone so far as to observe that if the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that [it] would have reached the same result." *Annappareddy*, 996 F.3d at 133 (internal quotation marks omitted) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020)) (first alteration in *Hernandez*, second alteration in *Annappareddy*).

"Consistent with that view, the *Abbasi* framework for determining whether a *Bivens* remedy is available 'places significant obstacles in the path to recognition of an implied cause of action.'" *Id.* (quoting *Earle*, 990 F.3d at 778). "First, the court must evaluate 'whether a given case presents a new *Bivens* context,'" a question which does not require any "radical difference" to be answered in the affirmative. *Id.* (internal quotation marks omitted) (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019)). Meaningful differences that may "make a given context a new one" include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

8

*Ziglar*, 582 U.S. at 139–40. "If the context is *not* new . . . then a *Bivens* remedy continues to be available." *Tun-Cos*, 922 F.3d at 522–23 (emphasis in original). "But if the context is new, then courts must, before extending *Bivens* liability, evaluate whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 523 (quoting *Abbasi*, 582 U.S. at 136). The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136.

The Fourth Circuit recently considered a *Bivens* action against federal investigators brought under several theories of liability arising from a search, arrest, and trial of a plaintiff that bears close resemblance to this case. *See Annappareddy*, 996 F.3d at 130. Among other theories of liability, the plaintiff in *Annappareddy* alleged that federal "investigators violated the Fourth Amendment in two respects: first by falsifying the affidavit submitted to obtain the search warrant (the '*Franks* claims'), and then by falsifying evidence in support of the arrest warrant and original indictment (the 'false arrest claims')." *Id.* at 135 (referencing *Franks v. Delaware*, 438 U.S. 154 (1978)). On appeal, the plaintiff urged the Fourth Circuit to "treat those claims separately," but the court observed that such claims "are not so easily disentangled." *Id.* "Nevertheless," the Fourth Circuit treated those claims "separately to the extent possible and useful for [its] analysis," ultimately concluding "that no *Bivens* remedy is available for any of these factually intertwined Fourth Amendment claims." *Id.*

In so holding, the Fourth Circuit first concluded that the plaintiff's claims constituted a new *Bivens* context. *See id.* at 135–37. "[A]lthough *Bivens*, too, was a Fourth Amendment case, '[c]ourts do not define a *Bivens* cause of action at the level of the Fourth Amendment' or even at the level of the unreasonable-searches-and-seizures clause.'" *Id.* at 135 (quoting *Cantú v. Moody*,

9

933 F.3d 414, 422 (5th Cir. 2019)) (alteration in *Annappareddy*). "What *Bivens* involved was the Fourth Amendment right to be free of unreasonable warrantless searches and seizures; this case, by contrast, involves searches and a seizure conducted *with* a warrant. It thus implicates a distinct Fourth Amendment guarantee – that 'no Warrants shall issue, but upon probable cause,' *see* U.S. Const. amend. IV – governed by different legal standards." *Id.* The Fourth Circuit thus reasoned that "the 'right at issue' [there was] meaningfully different from the one at issue in *Bivens* itself." *Id.* at 136 (quoting *Abbasi*, 582 U.S. at 140). The court also noted that "the 'alleged misdeeds'" differed meaningfully: "[s]peaking 'to witnesses, draft[ing] reports, and shar[ing] information with prosecutors and other investigators' are 'information-gathering and case-building activities' that represent 'a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*.'" *Id.* (quoting *Farah v. Weyker*, 926 F.3d 492, 498–99 (8th Cir. 2019)).

Such differences meant that the claims "would require 'a different type of showing' than did the claims in *Bivens*," "one that would pose a greater risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Id.* (first quoting *Ahmed v. Weyker*, 984 F.3d 564, 569 (8th Cir. 2020); and then citing *Abbasi*, 582 U.S. at 140). For example, to succeed on the *Franks* claim, the plaintiff "would have to establish that the defendants knowingly and intentionally or with reckless disregard for the truth made false statements or omissions in the warrant affidavit, and that those false statements or omissions were material to the magistrate judge's finding of probable cause." *Id.* (citing *Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2012)). "And to prevail on his Fourth Amendment false arrest claims, [the plaintiff] similarly would have to establish, among other things, that the defendants had 'deliberately or with a reckless disregard for the truth' made material false statements or omissions, 'undercut[ting] the grand jury's probable cause determination.'" *Id.* (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357

10

·(4th Cir. 2014)). But "*Bivens* did not require this type of fact-checking and conscience-probing, . . . which can, as the Supreme Court has warned, impose substantial costs." *Id.* (internal quotation marks omitted) (quoting *Ahmed*, 984 F.3d at 569).

The Fourth Circuit next concluded that "'special factors' counsel[ed] hesitation in extending the *Bivens* implied cause of action to [the plaintiff]'s Fourth Amendment claims." *Id.* at 137. The court noted that one special factor was "the existence of 'an alternative remedial structure,' even if it does not go so far as a *Bivens* remedy would." *Id.* (quoting *Abbasi*, 582 U.S. at 137). "Congress indeed has created a distinct and limited set of remedies to compensate individuals who suffer as a result of wrongful governmental conduct in the course of criminal prosecutions." *Id.* (citing *Farah*, 926 F.3d at 501). That "Congress has expressly provided a damages remedy for some victims of this particular type of injury" counseled against the creation of a freestanding remedy in damages under *Bivens.*" *Id.* (quoting *Farah*, 926 F.3d at 501–02). The Fourth Circuit further reasoned that another factor "counseling hesitation is the risk that a *Bivens* action for these Fourth Amendment claims would require courts to interfere in the executive branch's investigative and prosecutorial functions." · *Id.*

*Annappareddy v. Pascale* is dispositive here. Glover brings a single count alleging violations of the Fourth Amendment arising out of representations made by federal officers during the search warrant and grand jury indictment process associated with Glover's eventual arrest and prosecution. *See* ECF 14, at 10 ¶ 28 ("TFOs Defendants Patterson and Stern violated Plaintiff's clearly established rights at the time, under the Fourth and Fourteenth Amendments, when they caused Plaintiff to be falsely arrested and imprisoned, falsely indicted Plaintiff with two felony crimes . . . and maliciously prosecuted, under color of Federal, State and local law, without probable cause· or legal justification[.]"). Glover's claims rest on the assertion that Patterson

11

submitted a search warrant affidavit containing knowingly false, reckless, and intentionally misleading statements and omissions, and that Defendants both gave false or misleading testimony to the grand jury to secure Glover's indictment. *See, e.g., id.* at 8 ¶ 20. Like in *Annappareddy*, "proving the claims here would require 'a different type of showing' than did the claims in *Bivens* – one that would pose a greater risk of intruding on the investigatory and prosecutorial functions of the executive branch." 996 F.3d at 136 (citations omitted). Resolving the merits in this case "would involve delving into the evidence before numerous decisionmakers, including federal investigators, prosecutors, and the grand jury." *Farah*, 926 F.3d at 499. The information provided by Patterson and Stern to the magistrate judge, prosecutors, and the federal grand jury would "need to undergo examination for its truth or falsity." *Id.* "Nothing so intrusive was required to prove the claims in *Bivens*." *Id.* Accordingly, the Court concludes that this action would constitute a new *Bivens* context.[6]

The Court is further unable to distinguish the special factors counseling hesitation observed in *Annappareddy* from those present here. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367 (1983)). "[A]s the Eighth Circuit explained in *Farah*, Congress indeed has created a distinct and limited set of remedies to compensate individuals who suffer as a result of wrongful governmental conduct

---

[6] In *Annappareddy*, the Fourth Circuit also found it "significant that the search warrants" at issue "ran against the corporate entity of Pharmacare, and not the plaintiff himself." 996 F.3d at 136. Although that is not a consideration here, as the warrant ran against Glover himself, the Court does not read the Fourth Circuit's decision to rest primarily on this point and thus does not find this factual distinction significant enough to yield a different result.

12

in the course of criminal prosecutions." *Annappareddy*, 996 F.3d at 137 (citing *Farah*, 926 F.3d at 501). For example, "[t]he so-called Hyde Amendment allows courts to award attorney fees to criminal defendants who prevail against 'vexatious, frivolous, or . . . bad[-]faith' positions taken by the government." *Farah*, 926 F.3d at 501 (quoting Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (codified at 18 U.S.C. § 3006A note)). Moreover, "those who are wrongly convicted and sentenced may seek release under 28 U.S.C. § 2255 or sue the government for damages." *Id.* (citing 28 U.S.C. §§ 1495, 2513(e)). That such options may not have been available to Glover do not alter the Court's conclusion, but "actually cut[] against recognizing a new cause of action." *Id.* at 501–02 (alteration added). "[P]laintiffs are ineligible for relief under the unjust-conviction statute precisely *because* they were acquitted or had their charges dropped before trial." *Id.* at 502 (emphasis added). "The fact that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice." *Id.* That choice is not for this Court to disturb.[7]

Like *Annappareddy*, "[a]lso counseling hesitation is the risk that a *Bivens* action for these Fourth Amendment claims would require courts to interfere in the executive branch's investigative and prosecutorial functions." *Annappareddy*, 996 F.3d at 137. Glover's Fourth Amendment claim asserts knowing or reckless misconduct throughout Defendants' investigation and the indictment of Glover. *See, e.g.*, ECF 14, at 8 ¶ 20. Although the misconduct alleged here is somewhat less extensive and complex than the scheme alleged in *Annappareddy*, it is unclear to the Court how the claims here "could avoid 'a wide-ranging dive into all actions taken by each actor as well as

---

[7] Though, as the Fourth Circuit observed, "[t]hat does not mean that [the Court] can think of no policy reasons for making such a remedy available." *Annappareddy*, 996 F.3d at 138.

all evidence available to investigators, prosecutors, judges, and juries.'" 996 F.3d at 138 (citations omitted); *see also Farah*, 926 F.3d at 500 ("This type of showing would invite a wide-ranging· inquiry into the evidence available to investigators, prosecutors, and the grand jury."). Accordingly, the Court concludes that "special factors" counsel against extension of an implied cause of action into this new *Bivens* context. Glover's *Bivens* count will thus be dismissed.

## B.  *Request to Amend*

In Glover's opposition memorandum, he notes that to the extent the Court agrees with Defendants that dismissal is proper, "Plaintiff alternatively moves to amend his complaint to reintroduce his § 1983 claims in order to illuminate his causes of actions against Defendants in their respective capacities and roles as BPD PIB officers." ECF 20, at 3. Defendants oppose Glover's request for two reasons, including (1) that Glover's request fails to comply with Local Rule 103.6, governing leave to amend, and (2) because Glover's proposed amendment as gleaned from his opposition would be futile. ECF 26, at 10.

As an initial matter, the Court observes that Glover's "informal request does not comport with the Federal Rules or the Local Rules of this Court." *Woodward v. GEICO Advantage Ins. Co.*, Civ. No. GLR-21-952, 2022 WL 2953053, at *16 (D. Md. July 25, 2022) (first citing Fed. R. Civ. P. 7(b); then citing Local Rule 103.6 (D. Md. 2021); and then citing *Hall v. JPMorgan Chase Bank, N.A.*, Civ. No. JKB-19-2510, 2020 WL 1452132, at *8 (D. Md. Mar. 25, 2020)). "Under Fed. R. Civ. P. 7(b), a plaintiff's request to amend the complaint should come in the form of a motion to amend." *Jones v. Glendale Apartment Props. LLC*, Civ. No. DKC 24-3731, 2025 WL 2659875, at *7 (D. Md. Sept. 17, 2025). For example, "[t]he Fourth Circuit has held that a plaintiff's request for 'leave to amend [made] only in a footnote of their response to Defendants' motion to dismiss' does not constitute a proper motion to amend." *Id.* (quoting *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008)); *see also Cozzarelli*, 549 F.3d at 630–

31 ("[W]e cannot say that the district court abused its discretion by declining to grant a motion that was never properly made." (citing *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004))).

Moreover, the Local Rules of this Court provide that "[w]henever a party files a motion requesting leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion." Loc. R. 103.6(a) (D. Md. 2025). Additionally, "the party filing an amended pleading shall file and serve (1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type." Loc. R. 103.6(c) (D. Md. 2025). Glover does not attach a proposed amended complaint to his opposition. *See* ECF 20; *see also Demurjian v. Dunbar*, Civ. No. BAH-23-3180, 2025 WL 404380, at *6 (D. Md. Feb. 5, 2025) ("Where a request for leave to amend is made outside the bounds of a formal motion, a court is likely to deny the request if it does not specify what the proposed amendment is and what it will accomplish.").

Nevertheless, this Court has still granted a request for leave to amend made informally. *See, e.g., McCray v. Wells Fargo Bank, NA*, Civ. No. GLR 13-1518, 2017 WL 11849521, at *3 (D. Md. Nov. 13, 2017) (granting leave to amend where request was made in plaintiff's opposition). In such cases, however, "a court is likely to deny the request if it does not specify what the proposed amendment is and what it will accomplish." *Demurjian*, 2025 WL 404380, at *6. Glover's request specifies that he would re-assert § 1983 claim(s) against Defendants, and notes that Glover's original state court complaint contained a § 1983 count, ECF 5, at 9–14, although it is not entirely clear whether Glover's amended complaint would contain a count identical to that asserted prior. The Court agrees that such an amendment would not be subject to

15

the basis upon which the operative complaint is now dismissed. However, Defendants oppose Glover's request to amend on the grounds that the amendment would be futile because (1) "Defendants clearly were acting within their roles as federal TFOs at all times relevant to the matters at issue in this case" and (2) "Plaintiff's purported Section 1983 claims would be barred by the applicable statute of limitations." ECF 26, at 11–12.

Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). "There is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion." *Lavin v. Safeco Ins. Co. of Am.*, Civ. No. SAG-22-1788, 2022 WL 17342051, at *2 (D. Md. Nov. 30, 2022) (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). "Yet the Court need not apply the Rule 12(b)(6) standard when determining whether leave to amend would be futile." *Id.* It instead applies a "much less demanding standard." *Id.* "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

Although the Court has not yet seen the proposed amended complaint, Defendants' futility arguments do not suggest that Glover's second amended complaint would be "clearly insufficient or frivolous on its face." *See Johnson*, 785 F.2d at 510. For example, Defendants do not cite case law in support of their assertion that Defendants, who were state police officers and also federal

TFOs at the time of the events relevant to the complaint, cannot be subject to a § 1983 claim. *See* ECF 26, at 12. The Court also does not find Defendants' arguments related to the statute of limitations to be so cut and dry.[8]

For example, Defendants' statute of limitations arguments appear to treat any § 1983 claim *Glover* would file as two separate claims—one for alleged false or misleading testimony before a grand jury, and another based on the allegedly false or misleading affidavit supporting the warrant. *Cf.* ECF 26, at 3 ("Plaintiff's claims related to the Affidavit in Support of Search Warrant are untimely."), at 4 ("Plaintiff's claims related to Defendants' presumed grand jury testimony are untimely."). Defendants cite *Miller v. Spiers*, a case from the District of New Mexico, for the proposition that a plaintiff's § 1983 Fourth Amendment claim based on his allegedly false arrest "accrued on the date legal process was initiated against him," the latest possible date in that case being "the date the Second Grand Jury returned an indictment." Civ. No. 05-0577, 2007 WL 9724663, at *7 (D.N.M. Apr. 13, 2007), *vacated and remanded*, 339 F. App'x 862 (10th Cir. 2009); ECF 26, at 4. There, the district court read the plaintiff's complaint to contain three separate § 1983 claims arising out of the Fourth Amendment based on a search of plaintiff's residence, plaintiff's arrest, and testimony provided to the a grand jury. *See id.* at *6–7. However, the Tenth Circuit vacated and remanded that opinion in part because the plaintiff's complaint was properly read to "state a single claim for malicious prosecution," rather than multiple § 1983 claims, for

---

[8] "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* However, all facts necessary to the affirmative defense must clearly appear on the face of the complaint. *See id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

17

which the statute of limitations analysis was different. *Miller*, 339 F. App'x at 869 (holding that the appropriate accrual date for such a claim is when favorable termination occurs, there when the prosecutor filed the *nolle prosequi* as to the pending charges).

Other federal courts have before rejected reading § 1983 claims so narrowly where allegations of false or misleading grand jury testimony are involved. *See Downing v. Thompson*, No. 5:24-CV-00277-TES, 2024 WL 4829476, at *5 n.14 (M.D. Ga. Nov. 18, 2024) ("Defendants . . . argue count 13 is simply 'based on misrepresenting facts to a grand jury,' and that the statute of limitations ran from the date of the grand jury meeting. . . . Instead, the Court reads Plaintiffs' count as a malicious prosecution claim for lying before a grand jury—a claim that did not accrue until termination of the criminal action in Downing's favor."). Relatedly, the Fourth Circuit in *Annappareddy* observed "significant overlap in the alleged wrongdoing associated with each" Fourth Amendment claim asserted. 996 F.3d at 135. The Fourth Circuit treated those claims "separately to the extent possible and useful for [its] analysis," but noted that it did not believe those claims were "so easily disentangled," and described the claims later as "intertwined allegations of wrongdoing by prosecutors and criminal investigators in Annappareddy's prosecution." *Id.* at 126, 135.

In this Court's view, the cleanest record will be produced by permitting Plaintiff to file a second amended complaint, and then allowing Defendants to re-file their arguments in favor of dismissal, if they so choose, for the Court's substantive consideration under the Rule 12(b)(6) standard. *Cf. Lavin*, 2022 WL 17342051, at *2 (adopting the same procedure). Accordingly, Glover will be granted 21 days to file a second amended complaint asserting any § 1983 claims against Defendants. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Defendants must

respond "within 14 days after service of the amended pleading," if one is filed.  Fed. R. Civ. P. 15(a)(3).

## IV.   CONCLUSION

For the foregoing reasons, Glover's motion to strike is denied as moot, Glover's motion to file a surreply is denied, and Defendants' motion to dismiss is granted.  Glover's *Bivens* count is dismissed, but he is granted 21 days to file a second amended complaint asserting any § 1983 claim(s).

A separate implementing order will issue.

Dated: <u>March 3, 2026</u>

_____/s/_____
Brendan A. Hurson
United States District Judge

19